## UNITED STATES BANKRUPTCY COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KELLEY L. LINEHAN,**
    Debtor

Chapter 11
Case No. 05-22470-JNF

~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matters before the Court for consideration are the Motion for Authority to Sell Marriott Aruba Ocean Club Time Share Week (the "Sale Motion") filed by the Kelly L. Linehan (the "Debtor"), who is a joint owner of the time share with her spouse, Robert Bruce Linehan, Jr., a debtor in Chapter 13 Case No. 05-22492-JNF, and the Objection to the Motion filed by Debra and Michael Kemp (collectively, the "Kemps"), alleged creditors of the Debtor. The Court heard the matter on March 15, 2006 and allowed the Sale Motion in part. The Court ordered the proceeds to be held until further order and granted the parties an opportunity to submit briefs. The issue presented is whether the Kemps hold an equitable lien encumbering the time share.

1

Neither the Debtor nor the Kemps requested an evidentiary hearing. The pertinent and material facts needed to resolve the issue of the equitable lien are not in dispute. Accordingly, the issue raised by the pleadings is ripe for determination.

## II. FACTS

The Debtor filed a voluntary Chapter 11 petition on October 14, 2005. On Schedule A-Real Property,[1] she listed the Marriott Aruba Ocean Club Time Share with a value of a $9,240.

On December 7, 2005, the Kemps filed a proof of claim in which they represented that they held a secured claim against the Debtor in the sum of $300,000, arising out of judgment they obtained against the parents of the Debtor's spouse, Nancy and Robert B. Linehan (the "Senior Linehans"), on February 10, 2004 in the sum of $218,544.15. They attached to their proof of claim a Second Amended Complaint filed in the Essex Superior Court, Department of the Trial Court (Civil Action No. ESCV2004-01772-A).

On September 10, 2004, the Kemps sued Nancy and Robert Linehan, who are now Chapter 7 debtors in this Court,[2] as well as the Debtor an her spouse, Robert Bruce Linehan, Jr., in the Essex Superior Court for the purpose of collecting their judgment against the Senior Linehans. The Kemps obtained the judgment in an action commenced by the Senior Linehans against them in March of 2001. The Kemps prevailed on their counterclaim in

---

[1] The Court has not been asked to rule on the propriety of listing the timeshare on Schedule A, as opposed to Schedule B-Personal Property.

[2] The Senior Linehans filed Case No. 05-10233-JNF on January 12, 2005.

2

that action.

Through their Second Amended Complaint which they filed in the spring of 2005, the Kemps added the Debtor and her spouse as defendants and alleged, among other things, that the Senior Linehans fraudulently transferred property to her and her spouse. In particular, they alleged that "[s]ince the commencement of the underlying lawsuit, Robert Sr. and Nancy Linehan have transferred other property to their son and daughter-in-law, Robert Bruce Linehan, Jr. and Kelly Secrest Linehan in an effort to avoid paying the plaintiff's claim against them" . . . [and] . . . that "[s]uch property may include bank accounts, construction equipment, construction contracts, etc."

On February 10, 2006, the Debtor filed the Sale Motion to which the Kemps objected. In her Sale Motion, she disclosed that she and her husband acquired the timeshare for a purchase price of  $12,000 and obtained a Certificate with respect to the timeshare in July of 2002. The time share Certificate attached to the Motion indicates that the Debtor and her husband "entered into the Shareholder Register of Marriott Vacation Club International of Aruba Cooperative Association as an A-member(s) and as the holder of 2 A-Share(s)."

In an affidavit attached to her brief, the Debtor disclosed more about how she and her husband acquired the timeshare. She stated that, on December 22, 2001, after the Kemps had obtained their judgment against the Senior Linehans, she and her spouse paid a deposit of $1,940 for unit S683, week #23. The money for the deposit came from the couple's joint checking account into which they deposited their pay checks and monies from rental income. On February 15, 2002 they paid an additional $1,984. The Debtor

3

stated that some of the funds for the purchase of the timeshare came from her mother who had refinanced her house at 9 Whites Mountain Road in Gloucester, Massachusetts. On May 31, 2002, the Debtor and her husband signed the closing documents for the Aruba timeshare, and the transaction closed on July 18, 2003. The Debtor added that

> We paid a total of $12,900.00 plus $295.00 in closing fees for the Aruba Timeshare. We used my Providian credit account to pay $295.00. . . . The balance of the purchase price was financed through Marriott for $9,626. 00. . . On October 9, 2003, we paid the balance of the amount due on the Marriott loan, $9,170.34 with proceeds of a loan secured by a mortgage given for the purchase of 35 Green Street, Gloucester, MA as required by the Mortgage lender. . . . On October 23, 2003 Marriott acknowledged the payment in full. . . . Marriott Vacation Club issued us Mortgage Interest Tax Statements for tax years 2002 and 2003 which indicates that they had a secured interest in real estate.

The Debtor stated in her affidavit that no part of the funds used for the acquisition of the timeshare came from the Senior Linehans.

The Debtor removed the Essex action to this Court. In her Notice of Removal, the Debtor set forth the procedural context of the Essex Superior Court action which is germane to the equitable lien issue. She stated:

> 7. The Plaintiffs in the collection proceeding, to collect on the judgment against the Senior Linehans, for the first time alleged that the Senior Linehans were also doing business as R.B. Linehan Builders and named R.B. Linehan Builders, a sole proprietorship, as a Defendant in the collection proceeding.
> 8. The Debtor's husband Bruce Linehan who is also a contractor, is the only individual d/b/a R.B. Linehan Builders. Service was not made on Bruce Linehan.
> 9. On November 2, 2004, Bruce Linehan on behalf of R.B. Linehan Builders, filed an Answer with a Counterclaim against the Plaintiffs.
> 10. On November 24, 2004, Plaintiffs filed a Motion to Dismiss the Counterclaim of R.B. Linehan Builders pursuant to M.G.L. Ch. 231, 59(h). Bruce Linehan d/b/a R.B. Linehan Builders filed an opposition.

4

11. On November 24, 2004, Plaintiffs' filed a Motion to Join Robert Bruce Linehan, Jr. and Kelly Linehan as Defendants and the Third Party Defendants opposed. Said Motion was allowed on November 30, 2004. (Docket No. 8)

12. Plaintiffs alleged that R.B. Linehan Builders was either a reconfiguration of the Senior Linehans' company under the control of the Senior Linehans or the Senior Linehans fraudulently transferred their assets to the Third Party Defendants.

13. On November 22, 2004, the Plaintiffs filed a Motion for Attachment of Real Estate against Bruce Linehan and Kelly Linehan and the Third Party Defendants opposed. (Docket No. 9) A request for a hearing was made by the Third Party Defendants.

14. The Plaintiffs also filed a Motion for Preliminary Injunction on November 24, 2004 to which the Third Party Defendants opposed. (Docket No. 10) A request for a hearing was made by the Third Party Defendants.

15. On December 1, 2004, the Essex Superior Court allowed the Motion to Attach the Real Estate owned by Bruce Linehan, or by Bruce Linehan and Kelly Linehan as joint tenants, in the amount of $300,000.00 without a hearing.

16. The Plaintiffs attached the property owned by Bruce and Kelly Linehan at 36 Emily Lane, Rowley, Massachusetts, a property developed by R.B. Linehan Builders and owned by Bruce and Kelly Linehan, jointly.

17. Plaintiffs' Motion for Preliminary Injunction was allowed on December 1, 2004 as to Request 1 and 2 without a hearing.

18. On or about December 23, 2004, the Third Party Defendants Bruce Linehan and Kelly Linehan filed separate Motions for Reconsideration of the attachment and preliminary injunction.

19. On March 11, 2005, the Plaintiffs filed a Second Amended Complaint adding the Third Party Defendants as parties. Plaintiffs have never served the Amended Complaint upon the Third Party Defendants. Defendants have raised the failure of service as an affirmative defense in their pleadings.

20. The action against the Senior Linehans and the Third Party Defendants was stayed by the filing of the Chapter 7 bankruptcy by the Senior Linehans on January 12, 2005. (Chapter 7 Case No. 05-10233-JNF) (On July 20, 2005, Superior Court Judge Howard J. Whitehead rendered an opinion stating the entire proceedings were stayed.)

(footnote omitted).

On December 1, 2004, the Essex Superior Court allowed prayers 1 and 2 set forth in

the Kemps' Motion for a Preliminary Injunction. Thus, the court, in allowing prayers 1 and

5

2, enjoined the Debtor and her spouse from the following:

> distributing, disbursing, encumbering, wasting, alienating or otherwise
> divesting themselves of any assets or their interests therein, including but not
> limited to cash, real estate, bank accounts, accounts receivables, equipment,
> inventories, stock etc. such assets might be located [sic].

> distributing, disbursing, encumbering, wasting, alienating or otherwise
> divesting themselves of any assets or their interest therein, that they might
> have in the company known as R.B. Linehan Builders.

The Debtor and Robert Bruce Linehan, Jr. filed a Motion for Reconsideration of the order

entered pursuant to the Kemps' Motion for a Preliminary Injunction. The Superior Court

modified the preliminary injunction on March 11, 2005, the same day the Kemps filed their

Second Amended Complaint. The Superior Court docket entry for that day reflects the

following order:

> Allowed in part. The preliminary injunction issued Dec. 1, 2004 is modified
> as follows: paragraph 1 of that injunction shall be modified to include the
> final phrase "except for the expenditure of funds for normal and ordinary
> living or business expenses." As to paragraph 2, that paragraph remains in
> full force and effect. The defendants, however, may move for an alteration
> of the injunction should R.B.Linehan Builders wish to sell a developed
> property and place some or all of the proceeds of such sale into an escrow
> account. . . .

## III. DISCUSSION

A. Applicable Law

Several Massachusetts bankruptcy cases, including Aylward v. Lawrence Savings

Bank (In re Osgood), 203 B.R. 865 (Bankr. D. Mass. 1997); Gray v. FDIC (In re Ryan), No.

93-17922-CJK, 1996 WL 442737, *3 (Bankr. D. Mass. Feb. 20, 1996), and In re Borofsky, 138

B.R. 345 (Bankr. D. Mass. 1992), contain discussions of applicable Massachusetts law with

6

respect to equitable liens.   In In re Osgood, this Court stated:

> Under Massachusetts law, creditors' actions to reach and apply a debtor's property may take either statutory or non-statutory form. Foster v. Evans, 384 Mass. 687, 691-92, 429 N.E.2d 995 (1981); Stockbridge v. Mixer, 215 Mass. 415, 417, 102 N.E. 646 (1913); J. Nolan and L. Sartorio, Equitable Remedies, §§ 381-388, pp. 514-534 (West 1993 & Supp. 1995). However, the plaintiff in a non-statutory equitable action to reach and apply must be a judgment creditor. Stockbridge, 215 Mass. at 417, 102 N.E. 646.

Noting that the defendant was not a judgment creditor with respect to its deficiency claim at the time that it sought the injunction, the Court in Osgood stated that the creditor's only option was to have commenced a statutory reach and apply action against the debtor and another, adding:

> Statutory creditors' actions to reach and apply are governed by M.G.L. c. 214, § 3(6). Under the statute, the plaintiff must file a complaint against both the principal defendant and any third party who possesses property of, or owes a debt to, the principal defendant. Additionally, the plaintiff must seek an injunction restraining the debtor or a third party from disposing of property which the plaintiff intends to reach and apply in satisfaction of its claim. See Massachusetts Electric Company v. Athol One, Inc., 391 Mass. 685, 687-88, 462 N.E.2d 1370 (1984); Stockbridge, 215 Mass. at 418, 102 N.E. 646.

> A third party who possesses property of a debtor is a necessary party to an action to reach and apply. Massachusetts Electric, 391 Mass. at 688, 462 N.E.2d 1370 (one who possesses property sought to be applied to satisfy a debt "must be joined as a party defendant in an action to reach and apply, given his interest in the issue of his indebtedness to the principal defendant and in the disposition of the property in his possession"); William J. McCarthy Co. v. Rendle, 222 Mass. 405, 406, 111 N.E. 39 (1916). Only upon both the filing of an action to reach and apply and the issuance of an injunction restraining the transfer of the property sought to be reached and applied does the plaintiff acquire an equitable lien or equitable attachment upon the property. Foxborough Savings Bank v. Ballarino (In re Ballarino), 180 B.R. 343, 348 (D. Mass. 1995); Gray v. Federal Deposit Ins. Corp. (In re Ryan), 28 B.C.D. 790, 792, 1996 WL 442737 (Bankr. D. Mass. 1996); In re Borofsky, 138 B.R. 345, 347 (Bankr. D. Mass. 1992); McCarthy v. Rogers, 295 Mass. 245, 246-47, 3 N.E.2d 787 (1936); Rioux v. Cronin, 222 Mass. 131, 137,

7

109 N.E. 898 (1915); <u>Snyder v. Smith</u>, 185 Mass. 58, 62, 69 N.E. 1089 (1904); Nolan, Equitable Remedies, § 382 ("as to the non-judgment creditor, the mere filing of the complaint establishes no rights and creates no lien as to the property sought to be reached and applied in satisfaction of the debt. A lien as to such property may be established only upon the issuance of an injunction").

<u>In re Osgood</u>, 203 B.R. at 869.   The Court in <u>Osgood</u> relied upon an article published in the

Massachusetts Law Review.   In that article, the commentator stated:

> An action to reach and apply has some of the elements of both attachment and trustee process, but also has some unique elements. Reach and apply is a prejudgment security device which is equitable in nature; it seeks either to restrain the defendant's disposition of his own intangible property, and then to reach and apply such property to satisfy the plaintiff's claim. Elements of attachment are present because the defendant is restrained from disposing of his property in his possession. Elements of trustee process are present in that a third party, a trustee, is restrained from disposing of the defendant's property in the trustee's possession. The critical, unique element is the nature of the property. The property must not be subject to being attached or taken on execution in an action at law. In other words, the property must be an intangible or an equitable interest. In addition, the property must also be assignable.
>
>   In essence an action to reach and apply has a dual nature; it can be an equitable attachment or an equitable trustee process. An equitable attachment is an action at law against the defendant supplemented by an equitable proceeding for attachment of intangible property in the debtor's possession. An equitable attachment could be brought against intangibles such as negotiable instruments. An example of such a negotiable instrument would be a check held by the defendant payable by a third party to the defendant. An equitable attachment of the check would be initiated by a complaint which contains counts both against the defendant and against the bank upon which the check is drawn, or payor bank, as trustee of the check. The count against the defendant would seek to establish the defendant's obligation to the plaintiff. The count against the bank would seek to establish both that the

8

> bank has, or had funds available to pay the check and that the
> defendant is entitled to payment of the check. The complaint
> would contain two prayers for injunctive relief: one against the
> defendant restraining him from further transferring or
> encumbering the check and against the bank restraining it from
> paying on the check to the defendant. The complaint would
> also contain a prayer requesting that the funds in possession of
> the bank be reached and applied to pay the check in
> satisfaction of the plaintiff's claim against the defendant.

In re Osgood, 203 B.R. at 869-70 (quoting Michael C. Gilleran, Massachusetts Prejudgment

Security Devices: Attachment, Trustee Process, and Reach and Apply, Mass. L. Rev. 156,

169-170 (1984) (footnotes omitted)). *See also* In re Fraden, 317 B.R. 24, 38 (Bankr. D. Mass.

2004).

In In re Borofsky, the court discussed the origins of equitable liens. Differentiating

between statutory and non-statutory liens, it stated:

> The concept of an equitable lien dates back in Massachusetts law at least to
> Snyder v. Smith, 185 Mass. 58, 69 N.E. 1089 (1904). In Snyder, the court held
> that an injunction against the transfer of property effects an equitable
> attachment, which if created more than four months before a bankruptcy
> filing is good against the trustee in bankruptcy. The decision in McCarthy v.
> Rogers, 295 Mass. 245, 3 N.E.2d 787 (1936) is factually analogous to ours. The
> plaintiff obtained an injunction preventing the defendant from assigning an
> interest in stock. The defendant died while the injunction was still effective.
> Although the defendant's death terminated plaintiff's security interest in the
> stock, the court held that the injunction created an equitable lien which was
> good against other creditors and valid in bankruptcy against the trustee.
>
> In both Snyder and McCarthy, the creditor had proceeded against the
> debtor in an action to reach and apply. Creditors had for many years sought
> to enforce judgments through equitable proceedings. In 1851 the
> Massachusetts legislature supplemented the common law proceeding with
> a statutory action to reach and apply. *See* Foster v. Evans, 384 Mass. 687, 429
> N.E.2d 995 (1981). This statutory action did not require the creditor to
> previously reduce the claim to judgment or exhaust his legal remedies. Id. A
> creditor's ability to reach and apply shares of stock is now codified in Mass.

9

Ann. Laws c. 214 § 3(7) (Law. Co-op.1986).

Actions to reach and apply do not of themselves create a lien on the debtor's property. To create a lien, the creditor must obtain an injunction against debtor disposing of the asset. <u>Rioux v. Cronin</u>, 222 Mass. 131, 109 N.E. 898 (1915). Typically, the complaint itself seeks an injunction against the transfer and requests that the property be later sold to satisfy the judgment sought. A complaint to reach and apply must sufficiently describe the property sought to be reached and applied. <u>Phoenix Insurance Company v. Abbott</u>, 127 Mass. 558 (1879).

Here, Bergeron's complaint in the Massachusetts suit did not request an injunction against the Debtor transferring his stock in the Corporation. That request was made pursuant to a separate motion filed thereafter. Nor did the complaint or any other pleading ask that the stock be sold to satisfy the judgment sought in the complaint. The Massachusetts suit was thus not a traditional action to reach and apply. The injunction against transfer of the stock may have cured the initial absence of a "reach", but it did not transform the proceeding into one seeking to "apply" the stock or its proceeds to a judgment. There was no order of the Massachusetts court requiring that the stock be held to satisfy any future judgment.

<u>In re Borofsky</u>, 138 B.R. at 347-48 (footnote omitted). *See also See* Joseph R. Nolan and

Laurie J. Sartorio, 31 Mass. Prac., Equitable Remedies § 137 (2d ed. 2005). [3]

---

[3] In that article, the authors stated:

In any action pending in the . . . Superior Court . . . after the entry of a judgment, the plaintiff may by motion obtain equitable relief in order to reach and apply property of the defendant not subject to be attached and taken on execution in an action at law as well as property fraudulently conveyed by the debtor.

In substance, the statute provides for the extension of the jurisdiction of the Supreme Judicial Court and the Superior Court to enable them, in an action then pending, to apply the equitable jurisdiction analogous to a creditor's action or other remedies afforded by M.G.L.A. c. 214, § 3, cls. 6 to 8. In the absence of this statute a plaintiff would be required to reduce his claim to a judgment before invoking the aid of a court of equity. The plaintiff in such circumstances would be required to institute an

10

B. Analysis

The Kemps' Motion for a Preliminary Injunction was filed in the Essex Superior

Court action on November 24, 2004. The Kemps' Second Amended Complaint, through

which they named the Debtor and her spouse as defendants was filed on March 11, 2005.

Neither the Amended Complaint nor the Motion for a Preliminary Injunction referenced

any applicable jurisdictional statute[4] or rule of civil procedure.[5]   Neither used the words

---

independent action to reach and apply the property of his debtor.

Under the statute the "motion for equitable relief" must be filed in the
action then pending. It must be filed after the entry of judgment but before
the expiration of the time to appeal therefrom.

(footnotes omitted).

[4] Section 86A of Chapter 223 provides in relevant part the following:

Upon motion of the plaintiff at any time *after entry of a judgment in his favor*
in the . . . superior court, . . . but before the expiration of the time to
appeal . . . [the] court shall have jurisdiction by appropriate procedure and
process to cause to be reached, held and thereafter applied in payment of
any such judgment or decree in his favor in such action or suit the same
kind of property, right, title or interest, legal or equitable, of a defendant,
within or without the commonwealth, which may be reached and applied
under clauses (6) and (7) of section three of chapter two hundred and
fourteen, and any property, right, title or interest, legal or equitable, real
or personal, including any shares or interests in corporations . . .
fraudulently conveyed by the defendant with intent to defeat, delay or
defraud his creditors or to defeat or delay the plaintiff in the satisfaction of
his claim, or  purchased, or directly or indirectly paid for, by him [the
defendant], the record or other title to which is retained in the vendor or is
conveyed to a third person with intent to defeat, delay or defraud the
creditors of the defendant or to defeat or delay the plaintiff in the
satisfaction of his claim . . . .

11

"reach and apply."

_____

Mass. Gen. Laws c. 223, § 86A (emphasis supplied).  Thus, as the Debtor correctly recognizes, three types of assets may be subject to the statute:

> 1) property subject to Ch. 214, Sec. 3(6) and (7) which cannot be reached by attachment or taken on execution and corporate shares issued in Massachusetts or in the United States.
> 2) any property fraudulently conveyed, and
> 3) any property purchased or indirectly paid for by the judgment defendant, the record or other title to which is retained in the vendor or is conveyed to a third person with intent to defeat, delay or defraud the creditors of the defendant or to defeat or delay the plaintiff in the satisfaction of his claim.

Section 3 of chapter 214, provides that the supreme judicial and superior courts shall have original and concurrent jurisdiction of the following cases:

> (6) Actions by creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution although the property sought to be reached and applied is in the possession or control of the debtor independently of any other person or cannot be reached and applied until a future time or is of uncertain value, if the value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court. . . .

> (7) Actions to reach and apply shares or interests in corporations organized under the laws of the commonwealth or of the United States, and located or having a general office in the commonwealth, whether the plaintiff is a creditor or not, and whether the action is founded upon a debt or not.

Mass. Gen. Laws. ch. 214, § 3.  Section 3 "authorizes the courts to do certain things which they could not do under their general (equity) jurisdiction, and impliedly authorizes them to take any measures analogous to ordinary proceedings of courts of equity which may be necessary or proper to accomplish the work which they are set to do." Foster v. Evans, 384 Mass. 687, 689-92 (1981).

[5] *See* Mass. R. Civ. P. 4.2.

12

As the court noted in <u>In re Ryan</u>, the party asserting an equitable lien has the burden of establishing its validity.  1996 WL 442727 at *3.  Accordingly, in this matter, the Kemps have the burden of establishing the validity of their asserted lien.  The Court finds that they have not sustained that burden.

This matter is substantially similar to <u>In re Borofsky</u>.  The Kemps obtained an injunction against the Debtor and her spouse precluding them from divesting themselves of any assets, and that is all they obtained.  Because the Kemps do not have a judgment against the Debtor or her spouse, the provisions of Mass. Gen. Laws ch. 223, § 86A are inapplicable.  Because their complaint did not seek to reach and apply any property, the provisions of Mass. Gen. Laws ch. 214, § 3 are also inapplicable.  It would appear that the Kemps elected the remedy of attempting to set aside alleged fraudulent transfers, rather than filing a separate action to reach and apply assets of the Debtor and her spouse.  *See* Jordan L. Shapiro, Marc G. Perlin, and John M. Connors, 48 Mass. Prac. § 11.1 Actions to Reach and Apply (2006).

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that the Kemps do not have an equitable lien that would attach to the proceeds from the sale of the Aruba timeshare. Accordingly, the Kemps do not have an interest in the proceeds which must be adequately protected pursuant to 11 U.S.C. § 361.  Nevertheless, because her interest in the timeshare

proceeds is not exempt, the Debtor, to obtain confirmation of a Chapter 11 plan, must

satisfy the provision of 11 U.S.C. § 1129(a)(7).

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 28, 2006
cc: Ann Brennan, Esq., Jeffrey J. Cymrot, Esq., Christopher J. Sullivan, Esq.

14